## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

RECEIVED & FILED
05 NOV -4 PM 3: 18
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.

---

**CARMEN MOREL, JOSÉ ROMÁN, THE CONJUGAL PARTNERSHIP ROMÁN-MOREL, JEAN CARLOS ROMÁN, and FERNANDO ROMÁN CONCEPCIÓN,**

**Plaintiffs,**

**v.**

**DAIMLER-CHRYSLER, INSURANCE COMPANY ABC, and any other joint tortfeasors and their respective insurance companies,**

**Defendants.**

CIVIL NO. 05- 2162   (JAG )

**TORT LIABILITY FOR DAMAGES; NEGLIGENCE IN VIOLATION OF 31 L.P.R.A. 5141; PRODUCTS LIABILITY DESIGN DEFECT; PRODUCTS LIABILITY FAILURE TO WARN**

TRIAL BY JURY DEMANDED

---

## COMPLAINT

**TO THE HONORABLE COURT:**

**NOW APPEAR,** Carmen Morel, José Román, the conjugal partnership Román-Morel, Jean Carlos Román, and Fernando Román Concepción (hereinafter, "Plaintiffs"),  through the undersigned counsel, very respectfully allege, state and demand judgment as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction to hear this action pursuant to 28 U.S.C. sec. 1332, since there is complete diversity between the parties and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

2.     Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. sec. 1391 since the

events that gave rise to this cause of action occurred in this district.

## THE PARTIES

3.  Plaintiff Carmen Morel (hereinafter "Carmen") is of legal age, the mother of Jean Carlos Román and the deceased Johnathan Román (hereinafter "Johnathan"), the wife of José Román, and is domiciled in San Juan, Puerto Rico.

4.  Plaintiff José Román (hereinafter "José") is of legal age, the father of Jean Carlos Román and the deceased Johnathan Román, the husband of Carmen Morel, and is domiciled in San Juan, Puerto Rico.

5.  Plaintiff conjugal partnership Román-Morel is comprised of José Román and Carmen Morel.

6.  Plaintiff Jean Carlos Román (hereinafter "Jean Carlos") is a minor, represented by his parents José Román and Carmen Morel, and is domiciled in San Juan, Puerto Rico.

7.  Plaintiff Fernando Román Concepción (hereinafter "Fernando") is of legal age, the father of José Román, the grandfather of Jean Carlos Román and the deceased Johnathan Román, and is domiciled in Aguas Buenas, Puerto Rico.

8.  Defendant Daimler-Chrysler is an automobile company incorporated, operated, and with its principal place of business in Michigan or a state other than Puerto Rico.

9.  Defendant ABC Insurance Company is an insurance company incorporated and operated in a state other than Puerto Rico which has issued an insurance policy on behalf of Defendant Daimler-Chrysler, which cover the actions object of this Complaint, and is therefore liable to Plaintiffs, in whole or in part, for the actions herein described and the damages suffered by Plaintiffs.

## FACTS PERTINENT TO THIS CASE

10. Plaintiffs José Román and Carmen Morel gave birth to their second child, Johnathan Román, on May 15, 2004.

11. Johnathan was a healthy baby and a cherished addition to the Román family.

12. On November 29, 2004, Plaintiff José Román and Plaintiff Fernando Román Concepción were unloading Christmas presents from an Isuzu Trooper in front of the Román family home in the Los Paseos development of San Juan, Puerto Rico.

13. The Isuzu Trooper was parked in the driveway of the home.

14. A 1987 Mercedes-Benz 300SDL, manufactured by what is now Defendant Daimler-Chrysler, and owned by Plaintiff Fernando Román Concepción, was parked in the street in front of the Román home on a slight grade.

15. So that the interior cargo area of the Isuzu Trooper could be reassembled after the gifts were removed, Fernando unlocked his Mercedes-Benz and obtained a screwdriver from the trunk.

16. Because he anticipated that the reassembly would be completed quickly, he left his car unlocked.

17. During the time in which the Christmas gifts were being unloaded from the Isuzu Trooper to the side storage area of the house, Carmen was tending to her children, Jean Carlos and Johnathan, inside the house.

18. So that the children would not see the Christmas presents, Carmen was careful to not let Jean Carlos go outside.

19. At approximately 5:15 p.m. on November 29, 2004, once the presents were completely

unloaded and José and Fernando had begun reassembling the cargo area of the Isuzu Trooper, Carmen opened the front door of the house.

20.     Carmen opened the front door of the house because Jean Carlos wanted to go outside and Carmen knew that José and Fernando were in the front yard.

21.     Jean Carlos, who was only four years old, quickly ran outside.

22.     From inside the house, Carmen saw Jean Carlos inside his grandfather's Mercedes-Benz.

23.     Carmen, while holding Johnathan in her right arm, exited the house to remove Jean Carlos from the vehicle.

24.     When Carmen arrived at the Mercedes-Benz, she opened the front passenger door to physically remove Jean Carlos from the automobile.

25.     As Carmen was removing Jean Carlos from the Mercedes-Benz, Jean Carlos inadvertently contacted the center automatic transmission shift selector lever.

26.     Jean Carlos' inadvertent contact of the center automatic transmission shift selector lever caused the automobile to shift from park mode to another gear selection.

27.     As soon as the Mercedes-Benz shifted out of park mode, the automobile began to roll backwards.

28.     The open front passenger door of the Mercedes-Benz hit Carmen and caused her to lose control of Johnathan.

29.     Johnathan fell to the floor, partially underneath the automobile.

30.     Carmen yelled and José and Fernando immediately attempted to stop the rolling car.

31.     José, who was recovering from surgery on both wrists, ran to the rear of the car to put his

body weight against the car.

32.   Fernando ran to the driver's seat to stop the car and put the automobile back into park mode.

33.   José and Fernando were unable to stop the Mercedes-Benz before the front right tire had rolled sufficiently to pinch Johnathan between the road and the tire.

34.   Fernando then placed himself by the right front fender and lifted up on the vehicle as much as he could until assistance arrived, ultimately injuring his back.

35.   So that Johnathan would not be further injured, Fernando and several neighbors carefully moved the automobile by hand, lifting it away from Johnathan.

36.   José remained at the rear of the car to try to keep the vehicle from rolling further.

37.   At approximately 5:25 p.m. on November 29, 2004, José and Carmen arrived with Johnathan at the University of Puerto Rico Medical Center (hereinafter "Centro Medico").

38.   Johnathan was admitted to Centro Medico's trauma unit.

39.   Johnathan experienced difficulty breathing and eventually had a respiratory failure.

40.   Johnathan died at approximately 9:20 p.m. on November 29, 2004.

41.   At the time of Johnathan's untimely death, he was six months old.

42.   The 1987 Mercedes-Benz 300SDL in question was manufactured by Daimler-Benz AG which has merged into Daimler-Chrysler.

43.   The vehicle identification number ("vin") for the 1987 Mercedes-Benz is WDBCB25D0HA304402.

44.   At the time of the incident, the keys to the Mercedes-Benz were **NOT** in the ignition and the automobile was in park mode.

45.   The 1987 Mercedes-Benz 300SDL does not require a shift selector lever release button to be depressed before the shift selector lever can be moved from park mode to any other gear selection.

46.   The failure to incorporate a transmission shift selector lever release button which must be depressed prior to changing gears from park mode to any other gear selection constitutes a design defect in the 1987 Mercedes-Benz 300SDL, manufactured by Defendant Daimler-Chrysler, which is inherently dangerous and the proximate cause of Johnathan's death and Plaintiffs' damages.

47.   The 1987 Mercedes-Benz 300SDL does not require the ignition switch to be in the "on" position before the shift selector lever can be moved from park mode to any other gear selection.

48.   The failure to incorporate an ignition switch shift interlock device, which would require the key to put the ignition switch in the "on" position before changing gears from park mode to any other gear selection, constitutes a design defect in the 1987 Mercedes-Benz 300SDL, manufactured by Defendant Daimler-Chrysler, which is inherently dangerous and the proximate cause of Johnathan's death and Plaintiffs' damages.

49.   The 1987 Mercedes-Benz 300SDL does not require the service brake pedal to be applied before the transmission shift selector lever can be moved from park mode to any other gear selection.

50.   The failure to incorporate a brake transmission shift interlock ("BTSI") device, which would require the service brake pedal to be applied before the transmission shift selector lever can

change gears from park mode to any other gear selection, constitutes a design defect in the 1987 Mercedes-Benz 300SDL, manufactured by Defendant Daimler-Chrysler, which is inherently dangerous and the proximate cause of Johnathan's death and Plaintiffs' damages.

51.  The design of the 1987 Mercedes-Benz 300SDL is unreasonably dangerous and creates a substantial risk to the vehicle's operator and/or general public when being utilized in a manner foreseeable to the manufacturer.

52.  The design defect in the 1987 Mercedes-Benz 300SDL manifests itself in a sudden, unexpected, and potentially catastrophic manner without prior warning to the vehicle's operators and/or others in the proximity of the vehicle.

53.  If the 1987 Mercedes-Benz 300SDL had a transmission shift selector release button, ignition switch shift interlock, and/or a brake transmission shift interlock ("BTSI"), the gears on the automobile would not have been inadvertently changed from park mode to another gear selection, Carmen would not have been struck by the moving vehicle, Johnathan would not have been killed, and Plaintiffs would not have suffered damages.

54.  Defendant Daimler-Chrysler has failed to adequately warn the user that the 1987 Mercedes-Benz 300SDL is inherently dangerous and that the gears could be inadvertently changed from park mode to any other gear selection with little or no effort.

55.  Fernando purchased the 1987 Mercedes-Benz 300SDL in question on or about March 9, 2002 from MP Motor Sports in Carolina, Puerto Rico.

56.  Plaintiff Fernando Román Concepción has retained ownership and possession of the 1987 Mercedes-Benz since the date of the incident.

57.   The shift mechanism, ignition mechanism, and brake mechanism have not been substantially altered since the vehicle was originally manufactured and sold by Defendant Daimler-Chrysler.

### FIRST CAUSE OF ACTION
### NEGLIGENCE AGAINST DAIMLER-CHRYSLER

58.   Plaintiffs reallege and incorporate herein by reference all paragraphs as though fully set forth herein.

59.   Defendant Daimler-Chrysler, through its acts or omissions caused damage to Plaintiffs through fault or negligence in violation of 31 L.P.R.A. §5141.

60.   Defendant Daimler-Chrysler owed a duty to Plaintiffs to conform to a reasonable standard of conduct when designing and manufacturing the 1987 Mercedes-Benz 300SDL.

61.   Defendant Daimler-Chrysler breached that duty of care through its negligent acts or omissions during the design and manufacturing of the 1987 Mercedes-Benz 300SDL.

62.   At all times mentioned herein, Defendant Daimler-Chrysler negligently and carelessly manufactured, designed, fabricated, labeled, sold, distributed, supplied, packaged, advertised, marketed, warranted, tested, failed to test, failed to disclose testing results, failed to recall or correct, researched, failed to research, assembled, bought, serviced, inspected, failed to warn of defects, failed to provide adequate safety devices, and made representations to the general public in such a manner that the automobile was safe, when in reality the automobile was defective, dangerous, and hazardous, greatly increasing the risk of injury to persons using or in the proximity of the vehicle, in that the automobile was capable of causing, and did in fact cause, personal injuries to the Plaintiffs while being used or operated in a

reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous
for use by its users, operators, or others in the proximity, including Plaintiffs.

63.   The negligent acts or omissions of Defendant Daimler-Chrysler were the direct and
proximate cause of Johnathan's death and Plaintiffs' injuries, alleged more fully herein.

## SECOND CAUSE OF ACTION
## STRICT LIABILITY DESIGN DEFECT AGAINST DAIMLER-CHRYSLER

64.   Plaintiffs reallege and incorporate herein by reference all paragraphs as though fully set forth
herein.

65.   Defendant Daimler-Chrysler designed, manufactured, and placed the 1987 Mercedes-Benz
300SDL on the market and continues to be engaged in the business of selling automobiles.

66.   It is expected that automobiles designed, manufactured, and placed on the market will reach
the consumer without substantial change in the condition in which the product is sold.

67.   Defendant Daimler-Chrysler knew or should have known that the automobile was to be used
without inspection for design defects.

68.   Defendant Daimler-Chrysler knew or should have known that the 1987 Mercedes-Benz
300SDL contained design defects which cause injuries.

69.   The 1987 Mercedes-Benz 300SDL is an unsafe product and unreasonably dangerous.

70.   Defendant Daimler-Chrysler is strictly liable for Johnathan's death and the associated
injuries suffered by Plaintiffs, alleged more fully herein.

## THIRD CAUSE OF ACTION
## PRODUCTS LIABILITY FAILURE TO WARN AGAINST DAIMLER-CHRYSLER

71.   Plaintiffs reallege and incorporate herein by reference all paragraphs as though fully set forth

herein.

72.  Defendant Daimler-Chrysler knew or should have known of the substantial risk inherent in the 1987 Mercedes-Benz 300SDL resulting from the failure to incorporate a transmission shift selector release button, an ignition switch shift interlock devise, and/or a brake transmission shift interlock devise.

73.  There were no, or inadequate, warnings and/or instructions regarding the substantial risks inherent in the unreasonably dangerous 1987 Mercedes-Benz 300SDL.

74.  The absence of, or inadequacy of, the warnings made the 1987 Mercedes-Benz 300SDL inherently dangerous.

75.  The absence or inadequacy of the warnings and/or instructions were a proximate cause of Johnathan's death and Plaintiffs' injuries, described more fully herein.

76.  The omitted or inadequate warnings do not concern a danger of which the public is well aware.

## FOURTH CAUSE OF ACTION
## DIRECT INSURER LIABILITY

77.  Plaintiffs reallege and incorporate herein by reference all paragraphs as though fully set forth herein.

78.  Pursuant to 26 P.R. Laws Ann. § 2001, an insurance company is liable for the negligence or fault of its insured.

79.  Pursuant to 26 P.R. Laws Ann. § 2003, an action against an insurer may be brought separately or may be joined together with an action against its insured.

80.  Defendant ABC Insurance Company is jointly and severally liable to Plaintiffs for those

damages directly and proximately caused by Defendant Daimler-Chrysler, including but not limited to Johnathan's death.

## DAMAGES

81. Plaintiffs reallege and incorporate herein by reference all paragraphs as though fully set forth herein.

82. As heirs to Johnathan Román, Plaintiffs José Román and Carmen Morel inherit Johnathan's cause of action for physical, emotional, mental, and economic damages sustained as a result of his death.

83. The physical pain and suffering, as well as the fright experienced by Johnathan in the hours preceding his death, which are inherited by his parents, is in an amount not less than **FIVE MILLION DOLLARS ($5,000,000).**

84. As a result of the incident and Johnathan's death, José and Carmen have experienced their own mental and emotional pain and suffering, loss of companionship, love, affection, and the permanent loss of their child, and other emotional and mental damages in an amount not less than **SIX MILLION DOLLARS ($6,000,000).**

85. As a result of the incident and Johnathan's death, Jean Carlos has experienced mental and emotional pain and suffering, loss of companionship, love, affection, and the permanent loss of his brother, and other emotional and mental damages in an amount not less than **TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000).**

86. As a result of the incident and Johnathan's death, Fernando has experienced physical, mental and emotional pain and suffering, loss of companionship, love, affection, and the permanent

loss of his grandson, and other physical, emotional and mental damages in an amount not less

than **TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000).**

## TRIAL BY JURY

87.    Plaintiffs hereby demand trial by jury.

**WHEREFORE,** Plaintiffs respectfully demand judgment against Defendants, jointly and

severally, in an amount not less than sixteen million dollars ($16,000,000), plus an award for

punitive damages allowed by law in an amount deemed necessary and just by this Honorable Court,

as well as costs incurred, reasonable attorneys' fees, and such other relief as this Honorable Court

may deem just and proper under the circumstances.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 4th of November, 2005.

**INDIANO & WILLIAMS, P.S.C.**
207 del Parque Street, 3d Floor
San Juan, P. R. 00912
Tel: 787-641-4545/ Fax: 787-641-4544

**DAVID C. INDIANO**
U.S.D.C.  Bar No. 200601
david.indiano@indianowilliams.com